SETH GOLDMAN (SBN 223428)
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702
E-Mail: *Seth.Goldman@mto.com*

ROHIT K. SINGLA (SBN 213057)
VICTORIA L. BOESCH (SBN 228561)
SARALA V. NAGALA (SBN 258712)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, 27th Floor
San Francisco, CA 94105-2907
Telephone: (415) 512-4000
Facsimile: (415) 512-4077
E-Mail: *Rohit.Singla@mto.com; Victoria.Boesch@mto.com; Sarala.Nagala@mto.com*

Attorneys for APPLIED MATERIALS, INC.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| In re<br><br>MARK KESEL,<br><br>           Debtor. | Case No. 10-41653-RJN<br><br>RS No. JLW-4<br><br>CHAPTER 11<br><br>Hon. Randall J. Newsome<br><br>**OBJECTION TO DEBTOR'S MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:     April 7, 2010<br>Time:    10:30 a.m.<br>Ctrm:    220<br>             1300 Clay Street<br>             Oakland, CA 94612 |

Applied Materials, Inc. ("Applied"), by and through the above-captioned counsel, hereby objects to the Motion for Relief from Automatic Stay (the "Motion") filed by the debtor Mark Kesel (the "Debtor"). This opposition is supported by the Declaration of Rohit Singla filed contemporaneously herewith.

## I. INTRODUCTION

As the Debtor readily admits, this case was filed solely to block Applied from executing on its judgment against the Debtor and two other principals of MultiMetrixs, LLC, Boris Kesil and Elik Gershenzon. All three are jointly and severally liable with MultiMetrixs for about $1.4 million in sanctions awarded against them in a patent case by Judge Patel of the Northern District of California. Judge Patel found that Kesel, Kesil, and Gershenzon had knowingly submitted *forged* documents to the Patent and Trademark Office on two separate occasions, and then lied under oath at depositions, at trial, and in interrogatories about the forgeries and the inventorship of the patented invention. A summary of Judge Patel's findings and the basis for the sanctions award can be found in the November 23, 2009 Memorandum and Order from that case (at pages 12-13), attached as Exhibit 1 to the Singla Declaration.

In December 2009, Kesel, Kesil, and Gershenzon each filed a notice of appeal from the sanctions award, but none of them sought a stay of the judgment pending appeal, posted a bond to obtain a stay of execution, or sought relief from Judge Patel from the bonding requirements. Instead, on the eve of debtor examinations ordered by the district court, each of them filed bankruptcy to prevent the examinations, or any other enforcement mechanisms, from proceeding. By the present Motion, the Debtor seeks to keep the benefits of a stay of enforcement of Applied's judgment, while being relieved of the automatic stay to continue the appeal without posting a bond.

The Motion should be denied because the Debtor has failed to disclose material facts that would enable the Court to determine whether relief is appropriate. First, he has failed to request or justify retroactive stay relief, which is necessary because he in fact filed the opening appeal brief postpetition on March 11, 2010, without relief from stay.

Second, the Debtor has failed to seek employment of Kaplan, Gilman &

Pergament, LLP ("Kaplan") to represent him in the appeal, which he is required to do and which would disclose any connections or adverse interests at stake and disclose the source of Kaplan's compensation. This is particularly pertinent here since Kaplan represents not only the Debtor Mark Kesel, but also Boris Kesil, Elik Gershenzon, and purportedly MultiMetrixs in the appeal. All are jointly and severally liable with Kesel and their interests are or may be adverse to the estate. For example, each obviously has an interest in laying the blame for the forgeries and litigation misconduct on the other appellants as a means of increasing his chances on appeal or of maximizing any contribution/indemnity claim he has against the other bankruptcy estates. Disclosure of the source of payment may also reveal that the $95,000 retainer is in fact estate property and not the "gift" that the Debtor asserts it to be. Until this information is disclosed, the Court cannot determine whether the delay and cost of pursuing the appeal is in the best interests of the estate.

Third, the Debtor's bad faith use of bankruptcy to substitute the automatic stay for posting a bond justifies denial of the Motion. Many courts have refused to permit parties to use bankruptcy as a substitute for the requirement of filing a bond pending appeal. Denial is particularly appropriate here because questions remain about the value and validity of assets and liabilities reported by the Debtor, who has already demonstrated a willingness to forge documents and lie under oath on multiple occasions. These questions include the undisclosed value of Kesel's property management business (apparently called Neovision LLC), $500,000 in secured debt to his sister, and $600,000 in secured debt purportedly for "debt of MultiMetrixs" that Kesel incurred in September 2008, a month *after* MultiMetrixs filed bankruptcy. Furthermore, the Debtor appears to be paying his creditors in the ordinary course: he paid off more than $14,500 to five creditors in the five months before bankruptcy and lists only three unsecured creditors with total combined debts of only $4,800 (excluding Applied and a non-dischargeable divorce settlement from 2003). Thus, it is difficult to determine whether the Debtor even needs bankruptcy relief or could in fact post a bond. Accordingly, Applied asks the Court to either deny stay relief or condition it on the Debtor posting a bond pending appeal or seeking relief from the bond obligation from district court, rather than use bankruptcy as an end-run around Judge Patel.

Finally, Applied requests that any relief granted clarify that relief from the stay does not effect a waiver of Applied's rights, including the right to move for Rule 2004 examinations, to move to dismiss or convert the case, to move to appoint a chapter 11 trustee or examiner, or to move the Court to impose additional conditions on any stay relief, including adequate protection, as new facts are uncovered about the Debtor's assets and liabilities.

## II.     ARGUMENT

### A.     The Debtor Has Not Disclosed Relevant Facts Necessary to Determine Whether Relief is in the Best Interests of the Estate

As an initial matter, Kesel was required to seek stay relief to continue the appeal after filing for bankruptcy. *See Ingersoll-Rand Fin. Corp. v. Miller Mining Co., Inc.*, 817 F.3d 1424, 1426 (9th Cir. 1987) (requiring debtor to seek stay relief to appeal adverse judgment because "section 362 should be read to stay all appeals in proceedings that were *originally brought* against the debtor, . . ." (quotations and citations omitted) (emphasis in original)). The Debtor did not disclose in his Motion that he in fact filed the opening brief on appeal on March 11, 2010, nearly a month after filing bankruptcy but before seeking stay relief. (Singla Decl. ¶¶ 2-3.) The Debtor has not even requested, much less justified, retroactive stay relief.

Nor has the Debtor sought court approval to employ Kaplan, who has not made the required disclosures under 11 U.S.C. §§ 327, 329 and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (and applicable local rules). Although the Debtor claims that Kaplan has been paid $95,000 for his services by undisclosed friends and associates, Court approval and disclosure of connections and compensation is required even where a third party pays the attorney representing a debtor-in-possession. *See Cristopher v. Mir (In re BOH! Ristorante, Inc.)*, 99 B.R. 971, 972-73 (9th Cir. BAP 1989); *Land v. First Nat'l Bank (In re Land)*, 116 B.R. 798, 805 (D. Colo. 1990), *aff'd* 943 F.2d 1265 (10th Cir. 1991) (argument that approval not required when fees paid by third party "is erroneous as a matter of law and of fact"); *In re W.T. Mayfield Sons Trucking Co., Inc.*, 225 B.R. 818, 823-24 (Bankr. N.D. Ga. 1998) (payment by third party "is irrelevant to the obligation to obtain court approval" under section 327). This is to ensure that the professional does not represent or hold an interest adverse to the estate and that payments to

- 3 -

attorneys for the debtor are subject to careful scrutiny so as to prevent abuse. *See In re BOH! Ristorante,* 99 B.R. at 972-73.

Both of these goals would be served by requiring the Debtor to seek employment of Kaplan. Kaplan may represent an interest adverse to the Debtor's estate because of his representation of all three principals of MultiMetrixs, each of whom is jointly and severally liable on Applied's judgment. Each judgment debtor (all of whom are in bankruptcy) has an interest in laying the blame for the misconduct on the other judgment debtors both as a means of winning on appeal and also to maximize any contribution/indemnity claim against the other bankruptcy estates. The result is that Kaplan is caught in the middle because a position taken by one estate that reduces its liability necessarily increases it for the other estates, which are also his clients. Nor are these merely potential conflicts. Kesel already testified at his 341 meeting that unlike Gershenzon and Kesil, he was not an inventor and implying that he was not involved with the misconduct before the Patent and Trademark Office, (*see* transcription attached as Exhibit 2 to Singla Decl.). Moreover, these issues will require immediate and careful attention because the appeal is pending, the June 2010 bar dates are approaching in each case, and settlement with less than all defendants is a constant possibility. Thus, these conflicts are actual and present today.

Additionally, the Court and parties in interest need to know the source of the $95,000 retainer paid to Kaplan. (Motion at p. 2). Merely referring to friends and business associates is inadequate. *See Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 880-881 (9th Cir. 1995) (requiring complete disclosure of all facts). The disclosure is inadequate because it does not shed light on whether the persons that paid the money will seek repayment, have an interest in the litigation, have an interest adverse to the Debtor (*e.g.* as a creditor or otherwise) that may divide Kaplan's allegiances, or whether the money was funneled through these friends and associates but originated from the Debtor or through a business owned by the Debtor. *See, e.g., In re Land*, 116 B.R. at 805-06 (brother and mother paid funds either on behalf of estate or with claim for reimbursement from estate property); *In re W.T. Mayfield Sons Trucking Co.*, 225 B.R. at 826-27 (finding payment by subsidiary of debtor to constitute transfers of estate property).

- 4 -

OBJECTION TO MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 10-41653   Doc# 31   Filed: 04/05/10   Entered: 04/05/10 22:09:42   Page 5 of 9

It is essential that this information be disclosed prior to the Court lifting the stay and in effect permitting the Debtor to employ Kaplan to pursue the appeal. This information would help the Court determine whether pursuing the appeal is in the best interests of the estate, or whether the estate would be better served by recovering the $95,000 and moving expeditiously to proposing a chapter 11 payment plan (if indeed the Debtor has any intent to reorganize). Finally, the Court should consider the likelihood of success on appeal in weighing whether the delay and expense is justified. This is particularly relevant because the time to appeal the underlying inequitable conduct judgment against MultiMetrixs has long since expired.[1] The Motion fails completely to weigh these considerations and instead simply assumes that the case should be delayed to pursue the appeal.

**B. The Debtor's Bad Faith Requires Denial of the Motion or Conditioning of Relief**

1. **The Motion Should be Denied Due to the Debtor's Bad Faith**

The Debtor admits that he filed bankruptcy solely to prevent Applied from enforcing its judgment. (Motion at p. 3). It is undisputed that the Debtor did not seek a stay of the judgment or post a bond or request relief from such obligation. Instead, Kesel filed bankruptcy and now seeks to continue the appeal, while using the automatic stay in lieu of posting a bond or seeking relief from that obligation.

Numerous courts have held that such a use of bankruptcy constitutes bad faith and have dismissed the filing. In *In re Karum Group*, for example, the court dismissed the case because it had been filed solely to continue state court litigation without having to post a supersedeas bond. *In re Karum Group, Inc.*, 66 B.R. 436, 437-38 (Bankr. W.D. Wash. 1986). The court refused to let the court be used as a substitute for a supersedeas bond where the debtor would not otherwise need bankruptcy to pay its other debts in the ordinary course. That the

---

[1] The Debtor has conceded that the stay was lifted as to MultiMetrixs on November 21, 2008. (*See* Letter dated March 22, 2010 from Kaplan to United States Court of Appeals for the Federal Circuit, attached as Exhibit 3 to Singla Decl.) Thus, the time for MultiMetrixs to appeal the July 22, 2008 judgment ended on December 21, 2008—more than a year before a notice of appeal was filed. *See* 11 U.S.C. § 108(c).

- 5 -

OBJECTION TO MOTION FOR RELIEF FROM AUTOMATIC STAY
Case: 10-41653  Doc# 31  Filed: 04/05/10  Entered: 04/05/10 22:09:42  Page 6 of 9

debtor could not afford to post a bond and would have to liquidate if it lost the appeal, did not affect the outcome. Litigants cannot use bankruptcy as a way to avoid bond requirements on appeal. *Id.; see also In re Wally Findlay Galleries (New York), Inc.*, 36 B.R. 849, 851 (Bankr. S.D.N.Y. 1984); *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828-29 (9th Cir. 1994) (acknowledging power of bankruptcy court to dismiss filing used to avoid bonding requirement, even where dismissal might result in liquidation of ongoing business). Other courts have dismissed where the debtor did not seek relief from the bonding requirements or seek a determination from the original trial court of a bond commensurate with the debtor's financial ability. *See, e.g., In re Harvey*, 101 B.R. 250, 252 (Bankr. D. Nev. 1989); *In re Byrd*, 172 B.R. 970, 972 (Bankr. W.D. Wash. 1994). Courts have explained that staying enforcement while an appeal was pursued would be unfair since the judgment creditor would in essence fund the cost of the appeal and the administration of the bankruptcy estate during the appeal, while being prevented from seizing those funds because of the automatic stay. *See, e.g., In re Boynton*, 184 B.R. 580, 583-84 (Bankr. S.D. Cal. 1995).

For these same reasons, the Court should deny the Motion as a bad faith effort to use the Court as a substitute for posting a bond. This is particularly appropriate because: (1) the Debtor sought bankruptcy protection only on the eve of his debtor examination to prevent enforcement of Applied's judgment; (2) the Schedules and Statement of Financial Affairs indicate that the Debtor was paying his other debts in the ordinary course (*see* Exhibits X and Y to Singla Decl.); and (3) the Debtor never sought a stay of the judgment or relief from the bonding requirement to stay the judgment pending appeal.

2. **The Motion Should be Granted Only Upon Compliance with Certain Conditions**

As an alternative to denial of the Motion, the Court should condition relief from the stay. Applied asks that the Court require the Debtor to either post the necessary bond or seek relief from that obligation from Judge Patel, subject to any necessary examinations to determine the amount of a bond commensurate with the Debtor's financial ability. Applied seeks this requirement for two principal reasons. First, as noted by the courts in *In re Harvey*, *In re Byrd*,

and *In re Boynton*, it is prudent to safeguard against potential abuse by requiring a debtor to exhaust its avenues of relief from the bonding requirement under non-bankruptcy law before forcing a judgment creditor (and other creditors) to bear the risk and cost of delay during a bankruptcy.

Second, Applied remains gravely concerned that the Debtor has not fully and adequately disclosed his assets or asset values, or the validity of some of his liabilities. Just to take a few obvious examples, Kesel does not disclose or value an ownership interest in a company called Neovision LLC on Schedule B, yet his statement of financial affairs indicates Kesel is in the property management business through Neovision LLC and his February 2010 operating report includes bank statements for Kesel individually and Neovision with the same address (1025 Solano Avenue, Albany, CA). And although he initially disclosed a property management agreement with Neovision on Schedule G, under which it appears Neovision receives some or all of the $9,000 in operating expenses for Kesel's apartment building, Kesel later amended Schedule G to remove that agreement. Thus, it is not clear if Kesel owns Neovision, how much its worth, and how much Kesel really makes on the $15,882 of rent he generates on his apartment building. (*See* Exhibits 4-7 to Singla Decl.)

In addition, there is no information to substantiate nearly $500,000 in secured debt to Kesel's sister, including $260,000 incurred in 2008 on his house that has rendered it over-levered by $30,000 (based on Kesel's valuation). (*See* Exhibit 8 to Singla Decl.) Nor is there adequate information concerning the basis of $600,000 in secured debt on his apartment building (leaving it over-levered by $57,000) that was supposedly incurred in September 2008 "for debt of Multimetrix [*sic*]," even though that company filed chapter 7 bankruptcy a *month earlier* in August 2008. (*See id.*) Finally, Kesel shows only $90 per month left after expenses, yet he paid off over $14,500 in debt to five creditors in the months before bankruptcy, and lists only three unsecured creditors on Schedule F, with combined debts of $4,800 (excluding Applied and a non-dischargeable divorce debt from 2003). (*See* Exhibit 4 at SOFA Question 3, and Exhibit 9 to Singla Decl.) In short, we do not know all of the Debtor's assets and liabilities or even whether the Debtor can afford to post a bond or can afford a lower bond.

- 7 -

OBJECTION TO MOTION FOR RELIEF FROM AUTOMATIC STAY

Case: 10-41653   Doc# 31   Filed: 04/05/10   Entered: 04/05/10 22:09:42   Page 8 of 9

## C. The Court Should Limit the Scope and Effect of Any Relief Granted

Finally, Applied requests that the Court clarify that stay relief does not bar Applied, or any other creditor or party in interest, from seeking discovery of the Debtor pursuant to Rule 2004 and authorization from this Court, to seek to dismiss the case for bad faith, to convert it to chapter 7, or to seek appointment of a chapter 11 trustee or an examiner. Applied further requests that if the stay is not conditioned on seeking a bond or relief from Judge Patel, that the Court permit Applied to move for additional conditions to stay relief, including adequate protection, as new or additional facts may be discovered.

## III. CONCLUSION

WHEREFORE, Applied respectfully requests that this Court deny the Motion, or if granted, condition the relief and clarify the scope and effect of relief as set forth above.

Dated: April 5, 2010

Respectfully submitted,

Munger, Tolles & Olson LLP
  SETH GOLDMAN
  ROHIT K. SINGLA
  VICTORIA L. BOESCH
  SARALA V. NAGALA

By:   */s/ Seth Goldman*
      SETH GOLDMAN

Attorneys for APPLIED MATERIALS, INC.